UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Exzabrian W.,                             Civ. No. 17-4688 (ADM/BRT)

       Plaintiff,

v.                                             **REPORT AND RECOMMENDATION**

Nancy A. Berryhill,
Acting Commissioner of
Social Security,

       Defendant.

James H. Greeman, Esq., Greeman Toomey PLLC, counsel for Plaintiff.

Gregory G. Brooker, Esq., Marisa Silverman, Esq., United States Attorney's Office, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

      Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income ("SSI") benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 12, 15.) The matter is referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. L.R. 7.2, 72.1. For the reasons stated below, this Court recommends that Plaintiff's motion be granted, Defendant's motion be denied, and this matter be remanded for further consideration of

the opinion of Plaintiff's treating physician, Dr. Paul Erickson, that Plaintiff would be limited in his ability to respond appropriately to changes in a routine work setting.

## BACKGROUND

### I. Procedural History

Plaintiff applied for SSI under title XVI of the Social Security Act on May 2, 2014, alleging a disability onset date of September 1, 2006. (Tr. 230.)[1] The Social Security Administration ("SSA") denied Plaintiff's application on October 30, 2014, and then again on reconsideration on March 31, 2015. (Tr. 138, 146.) At Plaintiff's request, a hearing before an Administrative Law Judge ("ALJ") was held on December 7, 2016, and on May 17, 2017. (Tr. 38–79.) The ALJ denied Plaintiff's application on June 23, 2017, and the Social Security Appeal Council denied Plaintiff's request for review on August 30, 2017. (Tr. 1, 14.) The denial of review by the Appeals Council made the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981.

On October 13, 2017, Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.) On January 10, 2018, Defendant filed an Answer along with a certified copy of the administrative record. (Doc. Nos. 8, 9.) The parties have now filed cross-motions for summary judgement pursuant to the Local Rules. (Doc. Nos. 12, 15.)

---

[1]   Throughout this Report and Recommendation, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 9.)

## II.     Factual Background

Plaintiff was eighteen years old at the time of his alleged onset date of September 1, 2006. (Tr. 230.) Plaintiff was born and raised in Arkansas and moved to Minnesota in 2006. (Tr. 388, 330.) Records from the University of Minnesota Medical Center indicate that Plaintiff attended Special Education classes and dropped out of high school in eleventh grade. (Tr. 335.)[2] In 2016, Plaintiff did not have a permanent place to live, and he stayed back and forth with his aunt and his girlfriend. (Tr. 47, 364, 388.)

Between 2006 and 2016, Plaintiff worked for several employers, including Atlas Staffing Inc., Twin City Maintenance Team Inc., and Redking Foods LLC. (Tr. 242–45.) Plaintiff's therapist, Dr. Deirdre Golden, indicated that Plaintiff had many jobs but the longest employment lasted only ninety days because of his low tolerance for frustration. (Tr. 456.)

At issue in this appeal are Plaintiff's mental limitations. Plaintiff was first diagnosed with depression on September 13, 2006. (Tr. 331.) At his disability hearing on May 17, 2017, Plaintiff testified that he had problems with his temper and was frequently angry and anxious. (Tr. 50–51.) He testified to an eighth-grade education, and that he has difficulty reading. (Tr. 53, 55, 56.) Dr. Karen Butler, a licensed clinical psychologist, also testified at Plaintiff's hearing. (Tr. 56–66.) According to Dr. Butler, Plaintiff's ability to understand, remember, and apply information was moderately impaired. (Tr. 59.) Also according to Dr. Butler, Plaintiff's ability to interact with others was markedly impaired,

---

[2]     Another medical record shows Plaintiff only completed ninth grade. (Tr. 388.)

3

his ability to concentrate and maintain pace was markedly impaired, and his ability to manage himself was markedly impaired. (Tr. 59–61.) Dr. Butler testified that these marked impairments were due to Plaintiff's frequent anger outbursts and his ongoing depression. (*Id.*)

### III. The ALJ's Findings and Decision

In his decision dated June 23, 2017, the ALJ found that Plaintiff was disabled within the meaning of the Social Security Act and denied Plaintiff's SSI application. (Tr. 31.) The ALJ proceeded through the five-step evaluation process provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)(4). These steps are as follows: (1) whether the claimant is presently engaged in "substantial gainful activity"; (2) whether the claimant is severely impaired; (3) whether the impairment meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform other jobs available in sufficient numbers in the national economy. *Id*. § 404.1520(a)–(f).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 2, 2014, Plaintiff's application date. (Tr. 19.) At step two, the ALJ found that Plaintiff had the following severe impairments: "bipolar disorder, antisocial personality disorder, borderline intellectual functioning, post traumatic stress disorder, right knee and right shoulder degenerative joint disease, and Graves disease with history of thyroidectomy." (Tr. 19.)

At step three, the ALJ found that Plaintiff's degenerative joint disease of the right shoulder and knee do not meet the requirements of Listing 1.02, and his thyroid gland

disorder does not meet the listing for affected body systems under Listing 9.00B2. (Tr. 20.) The ALJ also found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of Listings 12.04 (depressive, bipolar, and related disorders), 12.05 (intellectual disorders), 12.08 (personality and impulse control disorders), and 12.11 (neurodevelopmental disorders). (Tr. 20.) Regarding the paragraph B criteria, the ALJ explained that Plaintiff has moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with supervisors, coworkers, and the public; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself. (Tr. 20–22.)

As it pertains to Listing 12.05, the ALJ reasoned that Plaintiff does not have significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the disorder before age 22. (Tr. 22–23.) The ALJ noted that Plaintiff lives independently and cares for himself. (Tr. 23.) The ALJ also noted that although Plaintiff obtained a full-scale IQ of 70 or below, he does not have a marked limitation in two, or an extreme limitation in one, of the four areas of adaptive functioning. (Tr. 23.)

Finally, the ALJ noted that no state agency psychological consultant concluded that a mental listing is medically equaled. (*Id.*) The ALJ gave "little weight" to the opinion of Dr. Butler, the impartial medical expert who testified that Plaintiff has marked limitations in his ability to interact with others, maintain concentration, persistence or pace, and adapt or manage himself. (*Id.*) The ALJ reasoned that the reports of consulting

5

examiners Dr. Alford Karayusuf and Dr. Craig Barron indicated a level of functioning inconsistent with the severity to which Dr. Butler testified. (*Id.*)

Next, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work, except he is "limited to frequent operation of hand controls, frequent handling with the right hand, occasional overhead reaching on the right, occasional climbing ramps and stairs, occasionally climbing ladders, ropes and scaffolds, frequently balancing, stooping, kneeling, crouching and crawling." (Tr. 23.) Further, the ALJ limited Plaintiff to "hearing and understanding simple oral instructions, simple, routine, and repetitive tasks, brief and superficial contact with coworkers and supervisors, defined as work rated no lower than an 8 in the fifth digit of the DOT 1991 Revised Edition code, and cannot interact with the public." (*Id.*)

In determining Plaintiff's RFC, the ALJ analyzed Plaintiff's symptoms using the two–step process: (1) whether Plaintiff's medical impairment could reasonably be expected to produce his symptoms, and (2) the extent to which the symptoms limit the claimant's functioning. (Tr. 24.) The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 24–25.)

The ALJ stated that the objective medical evidence is consistent with and supports the limitations stated in the RFC. (Tr. 25.) He noted that the most recent treatment notes from Dr. Golden, Plaintiff's treating psychologist, indicate that Plaintiff was reporting no

6

symptoms of depression. (*Id.*) Plaintiff was still struggling with mood liability, but his anger outbursts had reduced in frequency. (*Id.*) Dr. Golden reported that Plaintiff showed the greatest improvement with his treatment plan goal of identifying his inappropriate expressions of anger, and he was able to verbally express regret more often. (*Id.*)

The ALJ continued to explain that the treatment record overall documents gradual improvement in Plaintiff's symptoms and ability to manage his anger beginning in June 2016, when he started attending psychotherapy and taking prescribed medication on a regular basis. (Tr. 25.) When Plaintiff saw Dr. Sam Boyd in 2008 and Dr. Karaysuf in 2014, Plaintiff was not taking any psychotropic medication and was not involved in psychotherapy or other treatment for his psychological symptoms. (*Id.*) Dr. Golden's treatment notes document Plaintiff's improvement in his ability to identify physiological signs of anger. (*Id.*) The ALJ also noted that even though Dr. Karayusuf and Dr. Barron noted "bad or self sabotaging behavior," they also noted Plaintiff's ability to cooperate and participate when it suited his interests. (*Id.*) Drs. Barron and Karayusuf ultimately found that Plaintiff engaged in angry, antisocial behavior, but clinically found an ability to keep pace, including during a battery of testing by Dr. Barron. (Tr. 25–26.)

Considering the treating opinions on Plaintiff's mental limitations, the ALJ gave "some weight" to the state agency psychological consultants, stating that "[a]lthough the assessments do not take into account the entire treatment record, they are consistent with the examination findings of Drs. Barron and Karaysuf, and with Dr. Golden's treatment notes demonstrating improvement in symptoms with regular treatment." (Tr. 26.) Also, the ALJ gave "little weight" to Dr. Boyd's 2008 opinion because Plaintiff was not

receiving treatment for his psychological symptoms at that time. (*Id.*) Dr. Boyd's opinion was also considered inconsistent with Plaintiff's GAF score of 51–60, indicating only mild to moderate symptoms and/or deficits in functioning. (Tr. 28.)

The ALJ gave "substantial weight" to Dr. Karayusuf's opinion that Plaintiff is able to understand, remember and follow instructions, cannot interact with the public, and is limited to brief, superficial, and infrequent interactions with no more than two to three coworkers. (*Id.*) The ALJ reasoned that this opinion is consistent with treatment evidence showing improvement in Plaintiff's psychological symptoms. (*Id.*) However, the ALJ explained that Dr. Karayusuf's specification of two to three coworkers was a vocational conclusion outside his expertise. (*Id.*) The ALJ also found that Dr. Karayusuf's concern is appropriately addressed by the limitation of People Code 8 jobs with no team efforts requiring advanced interpersonal skills. (*Id.*)

The ALJ afforded little weight to Dr. Butler's finding of marked impairments for social interaction, pace, and adapt/manage, because they are inconsistent with the findings of Drs. Karayusuf and Barron at two separate consultative examinations. (*Id.*) While Dr. Butler cited examples of bad behavior, Dr. Karayusuf and Dr. Barron found that Plaintiff was able to cooperate and function when it suited Plaintiff's interests. (*Id.*) Accordingly, the ALJ concluded that Plaintiff's "bad behavior is volitional, subject to his control, and not the manifestations of an uncontrollable illness." (Tr. 29.)

The ALJ then stated that he "did carefully consider the opinions of Dr. Golden" because "the ability to examine the claimant adds to the force of the opinion." (*Id.*) According to the ALJ, this case "turns on whether Dr. Golden's treatment notes over the

course of 2016 support her summary finding on which Dr. Butler relied in part for her finding of marked impairments in the B criteria." (*Id.*) Those treatment records, the ALJ reasoned, "do not show a person whose bad behavior is determined by an uncontrollable illness. Rather it shows a person whose symptoms are improving with treatment and who has insight and volition." (*Id.*) For example, Plaintiff reported worsening anxiety, depression, and anger to Dr. Golden, but these symptoms are the result of conventional and situational stressors. (*Id.*) For example, Plaintiff has arguments with his girlfriend, who he loves and with whom he raises a child. (*Id.*) Plaintiff also recounted an incident to Dr. Golden where someone pulled a gun on him, and he "had the insight and self-control to perceive this as a bit of posturing and to walk away." (*Id.*) The ALJ determined that "[t]his is not a person in the uncontrollable throes of mental illness that leads to anger outbursts rendering him unfit to work." (*Id.*)

Therefore, viewing the "record as a whole, including the treatment notes of Dr. Golden," the ALJ found Plaintiff has no marked impairments and can function at routine repetitive work with limited social contacts. (Tr. 29–30.) The ALJ concluded that "[t]his is an individual who, ultimately, has shown the ability to control explosive outbursts that would make him unemployable." (Tr. 30.)[3]

---

[3] In considering Plaintiff's physical impairments, the ALJ gave no weight to the opinion of Dr. Erickson, a family medical provider who treated Plaintiff on multiple occasions, that Plaintiff would not be able to work for the foreseeable future due to shoulder derangement. (Tr. 26.) As discussed below, however, the ALJ did not address Dr. Erickson's opinion on Plaintiff's mental limitations.

9

At step four, the ALJ noted that transferability of job skills is not an issue because Plaintiff does not have past relevant work. (*Id.*) At step five, the ALJ found, pursuant to the vocational expert's testimony, that there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 31.) The ALJ therefore concluded that Plaintiff is not disabled under the Social Security Act. (*Id.*)

## DISCUSSION

### I. Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The SSA must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that he cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy

that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Commissioner's decision will be upheld if the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (citations omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). In other words, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Goff v. Barnhart* 421 F.3d 785, 789 (8th Cir. 2005). The whole record is considered, including "evidence that supports as well as detracts from the Commissioner's decision," and the Court will not reverse simply because some evidence may support the opposite conclusion. *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006). If it is "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's

findings," the Commissioner's decision must be affirmed. *Pearsall v. Massanarri*, 274 F.3d 1211, 1217 (8th Cir. 2001).

## II.     Analysis of the ALJ's Decision

Plaintiff argues that the ALJ erred by failing to consider Dr. Erickson's opinion concerning Plaintiff's mental limitations and at least one of Dr. Golden's opinions. (Doc. No. 13, Pl.'s Mem. 24–27.) To the extent that Dr. Golden's opinions were considered by the ALJ, Plaintiff argues that the ALJ erred by not giving them controlling weight. (*Id.* at 27–35.) Plaintiff also argues that the ALJ erred at step three in finding that Plaintiff had only moderate limitations in the four functional areas for mental impairments. (*Id.* at 35–37.) Plaintiff requests that this matter be remanded to the Commissioner of Social Security, either for an immediate award of benefits or for further proceedings. (*Id.* at 37.) Defendant argues that the ALJ properly evaluated the opinion evidence and that Plaintiff failed to prove that his impairments met or equaled a listing. (Doc. No. 16, Def.'s Mem.)

### A.     The ALJ's Assessment of Dr. Golden's Opinions is Supported by Substantial Evidence

Generally, a treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citation omitted). The ALJ "may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). The

regulations mandate that the ALJ must "always give good reasons" for the weight given to a treating physician opinion. 20 C.F.R. § 404.1527(c)(2). When treating physicians have different opinions regarding the extent of Plaintiff's disability, "it is the ALJ's task to resolve conflicts in the evidence and issues of credibility." *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018).

Dr. Golden offered three opinions that are included in the administrative record. (*See* Pl.'s Mem. 30.) First, on February 16, 2016, Dr. Golden stated that it "does not appear" that Plaintiff "is a candidate for employment due to his severe psychopathic tendencies." (Tr. 459.) According to Dr. Golden, Plaintiff would be unable to relate to supervisors or peers, there is a high likelihood of aggressive behaviors within a workplace, he has no tolerance for frustration, and he is unable to control his impulses. (*Id.*) According to Dr. Golden, these issues are complicated by Plaintiff's low cognitive functioning and impaired ability to learn which render him unable to complete even simple instructions for medial tasks. (*Id.*)

Second, on November 22, 2016, Dr. Golden offered a narrative opinion detailing Plaintiff's health history and prognosis. (Tr. 1049.) Dr. Golden explained that Plaintiff's diagnosis is bipolar disorder mixed type with psychosis, PTSD, and Antisocial Personality Disorder. (*Id.*) According to Dr. Golden, Plaintiff has worked numerous jobs over the years, but he was easily upset with customers, coworkers, and supervisors and became threatening and aggressive. (*Id.*) In Dr. Golden's opinion, "[i]t is unlikely that he will be able to learn to manage his emotions such that he could maintain any employment and he would be a risk to customers and staff, particularly supervisors." (*Id.*)

13

Third, on December 13, 2016, Dr. Golden offered an opinion specific to workplace limitations. (Tr. 1060–61.) Dr. Golden opined that Plaintiff has marked restrictions in his ability to understand, remember, and carry out short, simple instructions, and he has extreme limitations in the following work-related mental activities: understand and remember detailed instructions; carry out detailed instructions; and the ability to make judgments on simple work-related decisions. (Tr. 1060.) Dr. Golden also opined that Plaintiff is extremely limited in his ability to interact appropriately with the public, supervisors, and co-workers, his ability to respond appropriately to work pressures in a usual work setting, and his ability to respond appropriately to changes in a routine work setting. (Tr. 1061.)

As noted above, the ALJ stated that he "carefully consider[ed] the opinions of Dr. Golden." (Tr. 29.)[4] The ALJ found that a "careful review of those treatment records do not show a person whose bad behavior is determined by an uncontrollable mental illness. Rather it shows a person whose symptoms are improving with treatment and who has insight and volition." (*Id.*) The ALJ found that Dr. Golden's own treatment records did not support her opinions. (Tr. 29.) Instead, the ALJ properly found that Dr. Golden's treatment records showed an improvement in Plaintiff's symptoms with treatment, he exhibited insight, and his poor behavior did not stem from mental illness. (*Id.*) For example, Plaintiff began psychotherapy and prescription medication on a regular basis in

---

[4] Here, the ALJ cited Exhibit 17F, Dr. Golden's November 22, 2016 opinion, and Exhibit 20F. (Tr. 29.) The citation to Exhibit 20F is likely a typographical error, as Dr. Golden's December 13, 2016 opinion is located at Exhibit 21F. (Tr. 1060–62.)

14

June 2016. (Tr. 25, 444–46.) In July 2016, Dr. Golden noted that Plaintiff was able to identify inappropriate expressions of anger and was able to express regret. (Tr. 29, 437.) Her treatment notes from February 2017 showed that Plaintiff's anger outbursts reduced in frequency. (Tr. 29, 1049, 1086.) If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).

Relatedly, the ALJ also found that when Plaintiff's anxiety, depression, and anger worsened at times, it was the result of situational stressors, not mental illness. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001) (affirming denial of benefits because claimant's depression was "situational"). For example, Plaintiff showed insight by stating that he should isolate himself from friends who were abusing substances. (Tr. 29, 1085.) Plaintiff also recognized that a neighbor was posturing when the neighbor threatened Plaintiff with a gun. (Tr. 29, 1089.) As noted by Dr. Karayusuf and Dr. Barron, consultative examiners whose opinions were credited by the ALJ, Plaintiff's use of hostility was intentionally meant to establish dominance in a situation. (Tr. 364, 1066.)

Plaintiff argues that Dr. Golden's opinions were consistent with medical records from contemporaneous treating sources, and the ALJ erred by not mentioning or addressing those treating sources. (Pl.'s Mem. 30–32.) Plaintiff states that the ALJ did not discuss notes from nurse practitioner Sandra Schleter, reflecting anger, paranoia, hallucinations, general distrust, and limited knowledge and insight (Tr. 439, 442, 445, 451, 462–64); social worker Panukooci Vah, assessing Social Anxiety Disorder, Bipolar Disorder, Posttraumatic Stress Disorder, and Obsessive-Compulsive Disorder (Tr. 388–

15

90); registered nurse Karen Leaman, who prescribed medication to treat racing thoughts and hallucinations (Tr. 618); and Dr. Lusha Liu, who reported that Plaintiff felt urgent impulses to punch things, paranoia, and limited insight and judgment into his medical illness. (Tr. 428–29.)[5] The ALJ is not required to address every treatment note in the record, and the failure to cite specific evidence does not indicate that such evidence was not considered. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). Here, the ALJ considered these diagnoses in his decision and emphatically found that Plaintiff's mental state was improving with treatment, he had insight and volition, and his behavioral issues were not the result of an uncontrollable mental illness. (Tr. 29; Tr. 30 ("This is an individual who, ultimately, has shown the ability to control explosive outbursts that would make him unemployable.").) This conclusion is supported by substantial evidence in the record, including the opinions of Drs. Karayusuf and Barron.

For these reasons, this Court concludes that the ALJ did not err in his assessment of Dr. Golden's opinions, which were not entitled to controlling weight.

### B.   Dr. Golden's February 16, 2016 Opinion

As noted above, the ALJ's opinion includes a thorough discussion of Dr. Golden's assessment of Plaintiff's mental limitations (Tr. 29–30), and this Court concludes that the ALJ's decision not to give controlling weight to those opinions is supported by

---

[5]   Plaintiff does not argue that social worker Vah, nurse Leaman, or Dr. Liu are treating providers. *See* 20 C.F.R. § 404.1527(a)(2). Plaintiff asserts that nurse Schleter is a "treating provider," (Pl.'s Mem. 30–31), but nurse practitioners are not physicians, psychologists, or acceptable medical sources as defined by the Regulations. *See LaCroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006).

substantial evidence in the record. The ALJ did not, however, specifically mention Dr. Golden's February 16, 2016 opinion. Plaintiff argues that this constitutes reversible error. This Court disagrees because the ALJ appeared to be addressing all of Dr. Golden's opinions in a cumulative manner. As the ALJ explained, this case "turns on whether Dr. Golden's treatment notes *over the course of 2016* support her summary findings on which Dr. Butler relied in part for her finding of marked impairments in the B criteria." (Tr. 29 (emphasis added).) Moreover, Dr. Golden's February 16, 2016 opinion that Plaintiff is not a candidate for employment due to his "severe psychopathic tendencies" is not materially different from the basic tenor of all of Dr. Golden's opinions that Plaintiff cannot work due to his mental limitations. This Court therefore concludes that the ALJ properly considered all of Dr. Golden's opinions when formulating Plaintiff's RFC.

### C. Dr. Erickson's November 22, 2016 Opinion

Dr. Erickson, Plaintiff's primary care provider, is a treating physician according to the applicable regulation because he treated Plaintiff at least eight times during 2015 and 2016 and the treatment was directed to Plaintiff's medical conditions. (*See* Tr. 391–415); 20 C.F.R. § 404.1527(a)(2) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."). Dr. Erickson opined about Plaintiff's physical limitations, and he also offered an opinion that Plaintiff would experience "marked" limitations in his ability to respond appropriately to changes in a routine work setting. (Tr. 1050–52.) The ALJ considered Dr. Erickson's opinion on Plaintiff's physical limitations, but not his mental limitations. (*See* Tr. 27.) As noted

17

above, treating physician opinions are generally entitled to controlling weight, and the regulations require that the ALJ must give good reasons for rejecting such an opinion. *See* 20 C.F.R. § 404.1527(c)(2). Therefore, this matter should be remanded for the ALJ to address Dr. Erickson's opinion about Plaintiff's ability to respond appropriately to changes in a routine work setting. *See, e.g.*, *Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) ("Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand.").

### D.     The ALJ's Step Three Analysis

Plaintiff argues that the ALJ's step three analysis was inadequate. (Pl.'s Mem. 35–37.) In conjunction with this Court's recommendation that this matter be remanded for the ALJ to address Dr. Erickson's opinion on Plaintiff's mental limitations, the ALJ should also be directed to consider Dr. Erickson's opinion at step three of the sequential evaluation process.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.     Plaintiff's Motion for Summary Judgment (Doc. No. 12) be **GRANTED**;

2.     Defendant's Motion for Summary Judgment (Doc. No. 15) be **DENIED**;

3.     This matter be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Pursuant to 20 C.F.R. § 404.1527, on remand the ALJ should evaluate the opinion of Paul Erickson, M.D. that Plaintiff has marked limitations in his ability to respond appropriately to work pressures in a usual

18

work setting and give good reasons for the weight accorded to this treating physician's opinion. The ALJ should consider Dr. Erickson's opinion at steps three, four, and five of the sequential evaluation process.

Date: December 20, 2018               *s/ Becky R. Thorson*_____
                                      BECKY R. THORSON
                                      United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).